IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CV 37

| | | |
|---|---|---|
| TERESA EATON CAPPS | ) | |
| | ) | |
| Plaintiff, | ) | MEMORANDUM |
| | ) | AND |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the parties' cross motions for summary judgment. Docs. 11 & 14.[1]

I. Procedural History

On August 14, 2015, Plaintiff filed an application for disability insurance benefits alleging she was disabled beginning on July 15, 2012. Transcript of Administrative Record ("AR"), pp. 213-218. Plaintiff's claim was denied upon initial review and upon reconsideration. AR pp. 114-124 & 125-136. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") and a hearing was held in Asheville, North Carolina, where Plaintiff appeared and testified. AR pp. 29-68. Plaintiff was represented by counsel at the hearing.

---

1 The parties have consented to the disposition of this matter by a United States Magistrate Judge. Docs. 6 & 7.

1

On February 22, 2018, the ALJ issued an unfavorable decision. AR pp. 11-23. The Appeals Council denied Plaintiff's request for review of that decision on December 7, 2018. AR pp. 1-7.

On February 4, 2019, Plaintiff filed the instant action. Doc. 1. Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action and the ALJ's decision is the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.

## II. The Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual

functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

The ALJ determined that Plaintiff last met insured status requirements on September 30, 2013 and had the severe impairments of "degenerative disc disease of the cervical and lumbar spine, peripheral neuropathy, rotator cuff disease, osteoarthritis, Hashimoto's Thyroiditis, Sjogren's Syndrome, and Raynaud's Syndrome." AR p. 16. After finding that Plaintiff's impairments did not meet or medically equal the severity of certain listed impairments, including Listings 1.02 and 1.04, the ALJ found that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b). She can occasionally lift 20 pounds; and frequently lift 10 pounds. She can sit, stand, and walk for 6-hours out of an 8-hour workday. She can push and pull as much as she can lift and carry except she can operate foot controls bilaterally, on a frequent basis. She can operate hand controls bilaterally, on a frequent basis. She can frequently perform overhead reaching, bilaterally. She can frequently climb ramps and stairs. She can occasionally climb ladders, ropes, or scaffolds. She can frequently balance, stoop,

kneel, crouch, and crawl. She can be in an environment of unprotected heights and moving mechanical parts on a frequent basis. She can have occasional exposure to extreme cold and be around vibrations on a frequent basis.

AR p. 18.

Utilizing this RFC, the ALJ found that Plaintiff could perform other work, including the representative occupations of cashier, sales attendant, and routing clerk such that Plaintiff was not disabled from July 15, 2012 (Plaintiff's alleged disability onset date) through September 30, 2013 (the date Plaintiff was last insured). AR p. 22.

## IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it

4

does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Analysis

### A. Plaintiff's Allegations of Error

Plaintiff makes two allegations of error. First, Plaintiff contends that the ALJ erred by failing to find that Plaintiff was disabled at step three of the sequential evaluation process. Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.

### B. Period of Disability

As an initial matter, the Court notes that the ALJ found, and no party disputes, that Plaintiff was last insured on September 30, 2013. Consequently, for her to qualify for benefits, she must have been disabled prior to this date. Brown v. Comm. Soc. Sec. Admin., 873 F.3d 251, 253 (4th Cir. 2017) ("For Brown to qualify for disability insurance benefits, there must be a finding that he was disabled on or before his date last insured…."); O'Quinn v. Colvin, 1:10CV783, 2014 WL 4386168, at * 5 (M.D.N.C. Sept. 4, 2014) ("In order to receive disability insurance benefits, a plaintiff must establish that she was

disabled prior to the expiration of her insured status.").

Therefore, while the administrative record includes many medical records evidencing Plaintiff's condition after September 30, 2013, these records are relevant only "to the extent that they shed light on the claimant's condition prior to the expiration of her insured status." O'Quinn, 2014 WL 4386168, at * 5 (citing Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987)).

### C. Plaintiff's Listing Arguments

Plaintiff first argues that the ALJ erred by failing to find Plaintiff met the criteria for presumptive disability pursuant to §§ 1.02 (major disfunction of a joint(s)) and 1.04 (disorders of the spine) of 20 C.F.R., Part 404, Subpart P, Appendix 1 (the "Listings").[2]

#### 1. Overview of the Listings

The Listings detail impairments that are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a) & 416.925(a). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The

---

[2] Plaintiff's Memorandum in Support of Motion for Summary Judgment is 38 pages long, significantly longer than the limit of 25 pages allowed by Local Civil Rule 7.1(d). However, in the interest of justice as well as judicial efficiency, and considering that the Commissioner has not objected to the length of Plaintiff's brief, the Court has, in this instance, considered the entirety of Plaintiff's brief.

listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

"A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013); see also Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (explaining that step three "streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."). The burden of presenting evidence that an impairment meets or is medically equivalent to a listed impairment lies with the claimant. Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986).

"A diagnosis of a particular condition, by itself, is insufficient to establish that a claimant satisfies a listing's criteria." Odoms v. Colvin, 194 F.Supp.3d 415, 421 (W.D.N.C. 2016); see also 20 C.F.R. §§ 404.1595(d) & 416.925(d)). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Zebley, 493 U.S. at 530.

However, even if a claimant does not "meet" the criteria of a listing, her

7

impairments may "medically equal" those criteria. 20 C.F.R. §§ 404.1525(c)(5) & 416.925(c)(5). To establish such medical equivalency, the claimant must show that her impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a) & 416.925(a). Specifically, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Zebley, 493 U.S. at 531 (emphasis in original). "[S]howing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment" is not sufficient. Id; see also SSR 83–19, 1983 WL 31248, at * 3 ("As in determining whether the listing is met, it is incorrect to consider whether the listing is equaled on the basis of an assessment of *overall* functional impairment. The level of severity in any particular listing section is depicted by the *given set* of findings and not by the degree of severity of any single medical finding—no matter to what extent that finding may exceed the listed value.") (emphases in original).

"An ALJ is not required to explicitly identify and discuss every possible listing that may apply to a particular claimant. Instead, the ALJ must provide a coherent basis for his step three determination, particularly where the 'medical record includes a fair amount of evidence' that a claimant's impairment meets a disability listing." Odoms, 194 F.Supp.3d at 421 (citing Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

When an ALJ's analysis is reviewed, even "[a] cursory explanation" at step three may be "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Id. (citing Meador v. Colvin, 7:13–CV–214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 Fed. Appx. 326, 328 (4th Cir.2011))).

### 2. Listing 1.02

Listing 1.02 sets forth the requirements for musculoskeletal impairment due to "major dysfunction of a joint(s) (due to any cause)" "[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." To satisfy Listing 1.02, a claimant must show:

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or

> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.[3]

The phrase "inability to perform fine and gross movements effectively" requires an "extreme loss of function in both upper extremities" to the point that the individual is not "capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living." Listing § 1.00B.2.c. The regulation sets forth the examples of "the inability to prepare a simple meal and feed oneself, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." Id.

In his decision, the ALJ found that "the record is devoid of evidence of…involvement of one major peripheral joint in each upper extremity, resulting in inability to perform fine and gross motor movements effectively." AR p. 17. Although the ALJ did not provide an extended discussion of Listing 1.02B, substantial evidence, as well as Plaintiff's own briefing, supports the ALJ's decision.

The ALJ correctly noted that "in terms of her activities of daily living, [Plaintiff] reported that she was able to take care of her personal hygiene, dress

---

[3] Plaintiff's briefing regarding Listing 1.02 focuses on her shoulder and therefore the undersigned considers Plaintiff's argument to fall under Listing 1.02B.

herself, and perform some household chores." AR p. 19.[4] Such activities are not indicative of the type of "extreme loss of function in both upper extremities" required by § 1.00B.2.c.

Further, Listing 1.02B requires "[i]nvolvement of one major peripheral joint in *each* upper extremity." Some of Plaintiff's medical records include references to a limited range of motion bilaterally, see AR pp. 79, 85, 77. Other records, however, indicate no involvement or limited involvement of Plaintiff's right shoulder.[5] In addition, Plaintiff's briefing focuses on impairment to her left shoulder. Doc. 12, p. 28 ("the evidence clearly shows that Mrs. Capps' left upper extremity was substantially limited as early as November 2011 and became much worse through the date last insured. The evidence shows that she could not perform fine or gross motor movements with her left upper extremity.").

### 3. Listing 1.04

Listing 1.04 addresses disorders of the spine, such as degenerative disc disease, "resulting in compromise of a nerve root…or spinal cord." To qualify

---

[4] In a September 9, 2015 Adult Function Report, Plaintiff reported difficulty with grasping and reaching but also reported that she could feed herself, vacuum, load dishes, and pick up dishes. AR p. 271. During the hearing, Plaintiff testified that she could tie knots. AR p. 53.

[5] See AR pp. 410 (August 20, 2012 note reflecting that Plaintiff "does not have any symptoms on the right."); 413 (November 8, 2012 note reflecting Plaintiff reported pain in left upper extremity, "some symptoms on the right but mostly on the left.").

as disabled under Listing 1.04, a claimant must show:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Here, the ALJ found that Plaintiff had the severe impairment of "degenerative disc disease of the cervical and lumbar spine." AR p. 16. When considering the applicability of Listing 1.04, the ALJ explained that "the record is devoid of evidence of nerve root compression, consistent limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness), sensory or reflex loss, spinal arachnoiditis, lumbar spinal stenosis with accompanying ineffective ambulation, or positive straight leg raising test

(sitting and supine)." AR p. 17.[6]

The undersigned finds that substantial evidence supports the ALJ's conclusion regarding Listing 1.04 as well. Plaintiff does not point to any evidence of "nerve root compression characterized by neuro-anatomic distribution of pain" but instead cites to medical records indicating that a canal stenosis at the L5-S1 level was "suspected" and argues that there is a "slight encroachment" at the L4-5 level. Doc. 12, p. 29. Likewise, although Plaintiff cites to records reflecting numbness and limited range of motion, Plaintiff does not point to any evidence of atrophy with associated muscle weakness or muscle weakness, and relevant medical records consistently reflect Plaintiff's normal muscle strength.[7] Finally, Plaintiff does not cite, and the administrative record does not reflect, evidence of positive straight leg raises

---

6 The ALJ appears to have considered the possible applicability of all three subsections of Listing 1.04. However, Plaintiff does not cite to evidence in the record, and the Court's own review has found none, showing confirmation of spinal arachnoiditis as required by Listing 1.04B. Also, Plaintiff does not argue that she is unable to ambulate effectively as required by Listing 1.04C. Accordingly, the undersigned has considered the potential applicability of Listing 1.04A.

7 See AR pp. 413 (November 8, 2012 record observing normal strength); 80-87 (March 13, 2013 note indicating exam showed 5/5 strength with normal motor tone and bulk, with no atrophy); 85 (March 13, 2013 note reflecting 5/5 strength); 77 (March 21, 2013 exam showing normal musculoskeletal strength); 71 (April 9, 2013 exam reflecting good cuff strength of 5/5 and encouraging Plaintiff to do home exercises and formal rehab); see also AR p. 682 (November 6, 2013 exam reflecting 5/5 strength in major joints and muscle groups). An April 19, 2012 Physical Therapy examination note does reflect a "treatment diagnosis" of "muscular wasting and disuse atrophy, not elsewhere classified." AR 729. However, the genesis of this diagnosis is unclear, and this examination note predates Plaintiff's alleged disability onset date.

both sitting and supine.[8]

### D. Plaintiff's RFC

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). SSR 96-8p, 1996 WL 374184 (July 2, 1996), provides that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. The Commissioner is responsible for determining the claimant's RFC based on all the relevant evidence. Johnson, 434 F.3d at 653. In formulating an RFC, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). An ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion. Monroe, 826 F.3d at 189; see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

Here, based on his evaluation of Plaintiff's testimony and review of Plaintiff's medical records, the ALJ found that Plaintiff had the capacity to sit, stand, and walk for six hours in an eight-hour day and could "frequently"

---

8 Although Plaintiff asserts that "the evidence showed that her lumbar spine had deteriorated and substantially limited her use of her lower extremities," Doc. 12, p. 32, the only reference in the administrative record to straight leg testing is a March 28, 2011 record reflecting a negative straight leg test. AR 379.

14

operate hand controls and reach overhead. AR pp 18-19.[9] In developing Plaintiff's RFC, the ALJ found that "the record shows [Plaintiff] has not generally received the type of medical treatment one would expect for a disabled individual, from her alleged onset date of July 15, 2012 through her date last insured of September 30, 2013." AR p. 19. Although the ALJ noted that more recent medical records (i.e., medical records dated after Plaintiff's date last insured) were "more suggestive of disability," the ALJ found that the "limited treatment records for the period in question" showed "mild disc space narrowing at the L5-S1 and a disc bulge at L4-5," "mild degenerative disc disease and no disc herniation," "some tenderness and tightness over the scapula," some improvement with physical therapy, and the possibility of thoracic outlet syndrome. AR pp. 19-20.[10] Treatment records contained in the administrative record at the time the ALJ considered Plaintiff's claims provide substantial evidence to support the ALJ's conclusions,[11] and records

---

[9] "Frequently" is defined in Social Security Ruling 83-10 as more than 1/3 up to 2/3 of an 8-hour day. See SSR 83-10, 1983 WL 31251; see also Turner v. Astrue, 3:12cv422-MOC-DSC, 2013 WL 1182681, at * 3 (W.D.N.C. Feb. 12, 2013) ("As SSR 83–10 makes clear, 'frequent' 'means occurring from one-third to two-thirds of the time.'").

[10] The ALJ also considered "medical evidence of record after the claimant's date last insured of September 20, 2013, understanding that additional evidence developed in a longitudinal review may be of assistance in assessing functionality during the relevant period." AR p. 20.

[11] See AR pp. 409 (August 2, 2012 record reflecting some improvement with PT that does not last, some tightness and tenderness in left scapula); 410 (August 20, 2012 note indicating Plaintiff "may" have a stenosis on the right and was exhibiting

15

subsequently submitted to the Appeals Council do not dictate a contrary result.[12]

Plaintiff argues that the ALJ should have adopted an RFC that "limited [Plaintiff] to short periods of use of her arms and hands and standing and walking." Doc. 12, p. 37. Plaintiff additionally points out that during the November 20, 2017 hearing, the vocational expert ("VE") testified that a claimant who was off-task 15 percent of the time in an eight-hour workday in addition to normal breaks would be precluded from performing the representative occupations identified by the VE, as would an individual who

---

symptoms of thoracic outlet syndrome); 413 (November 8, 2012 note assessing thoracic outlet syndrome); 609 (October 2, 2013 treatment note reflecting tender cervical and lumber spine with decreased range of motion, tender shoulders and wrists, and recommending Plaintiff "get on a good aerobic exercise program.").

12 See AR pp. 97 (August 31, 2012 note reflecting inconsistent range of motion testing in shoulders, restricted range of motion in cervical spine and concluding exam was "inconsistent."); 88 (March 13, 2013 treatment note indicating limited range of motion in shoulders, some decreased sensation in digits, normal strength and tone, normal stride and gait, and electrophysiologic findings that were "suggestive, but not diagnostic, of a mild right C7 radiculopathy."); 85 (March 13, 2013 note indicating normal strength, no tenderness, pain, or numbness, diminished range of motion); 77 (March 21, 2013 note showing normal strength, gait, reflexes, and mobility but limited shoulder range of motion and decreased sensation in fingertips); 71 (April 9, 2013 note reflecting good cuff strength of 5/5, forward flexion, external rotation, and internal rotation but also some limitations in active or passive forward flexion with "some guarding."). During the November 20, 2017 hearing, Plaintiff's counsel confirmed that the evidence then submitted (which did not include the records discussed in this note) completed the evidence in the case. AR p. 35. Following the hearing, Plaintiff submitted additional medical records. AR pp. 69-113. The Appeals Council found that this evidence did "not show a reasonable probability that it would change the outcome of the decision" and declined to exhibit the evidence (although it still appears in the administrative record). AR p. 2. Plaintiff does not challenge the Appeals Council's determination regarding the treatment of this evidence.

could use their upper arms and hand "less than 30 minutes out of an hour." See AR pp. 62 & 64-65.

However, medical evidence limiting Plaintiff's use of her arms or hands in this way or requiring Plaintiff to take such breaks is lacking. As noted by the ALJ, Plaintiff reported that she was able to take care of her personal hygiene, dress herself, and perform some household chores.[13] Nor do the medical records support a limitation in Plaintiff's ability to sit, stand, or walk.[14] An ALJ is only required to include in his hypothetical to the VE and in the claimant's RFC limitations that the ALJ finds to be supported by substantial evidence. See Caldwell v. Colvin, 5:16-cv-15, 2016 WL 5858998-FDW-DSC, at * 4 (W.D.N.C. Oct. 6, 2016) ("because substantial evidence supports the limitations that the ALJ both included and declined to include in her hypothetical question and RFC determination, the ALJ did not err."). Here, the Court finds that the ALJ's RFC determination was proper.

---

13 See supra n. 4.

14 See AR pp. 81 (March 13, 2013 treatment note reflecting Plaintiff's normal stride length and speed with respect to gait); 77 (March 21, 2013 note reflecting mobility and gait within normal limits). A residual functional capacity evaluation completed by Dr. Pamela Jessup following review of Plaintiff's medical records indicated Plaintiff was able to stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday and sit (with normal breaks) for the same amount of time. AR 132.

Accordingly, Plaintiff's Motion for Summary Judgment (Doc. 11) is **DENIED** and the Commissioner's Motion for Summary Judgment (Doc. 14) is **GRANTED**.

Signed: January 23, 2020

W. Carleton Metcalf
United States Magistrate Judge